Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| CARMEN YOMARA VILLORIA BARRIOS<br><br>*Apelante*<br><br><br>v.<br><br><br>ALPHINE HEALTH TECHNOLOGIES CORP Y OTROS<br><br>*Apelados* | KLAN202500236 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>SJ2022CV00487 (908)<br><br><br>Sobre:<br>Discrimen (Ley Núm. 100) y otros |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de mayo de 2025.

Comparece la señora Carmen Yomara Villoria Barrios (señora Villoria Barrios o apelante), la cual solicita la revocación de la *Sentencia*[1] emitida el 20 de octubre de 2024 y notificada el 23 de octubre del mismo año, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro apelado). Mediante el referido dictamen, el foro apelado desestimó sumariamente la reclamación de la señora Villoria Barrios.

Por los fundamentos que discutiremos a continuación, **confirmamos** la sentencia apelada.

**I.**

El 25 de enero de 2022, la apelante presentó una *Demanda*[2] contra Alpine Health Technologies Corporation (Alpine o apelado), en la cual, en síntesis, alegó que al momento de presentar su petitorio tenía 64 años. Expresó que desde el 2015 trabajaba para Alpine como gerente de proyecto y era compensada con un salario

---

[1] Véase, Apéndice del recurso de *Apelación,* págs. 2-13.
[2] Entrada #1 de SUMAC.

Número Identificador
RES2025_____

de $42,000.00 por cada año trabajado. Además, adujo que el apelado no le realizó evaluaciones sobre su desempeño profesional. Alegó que, en el mes de abril de 2018, todo el personal asignado a la oficina de manejo de proyectos del apelado renunció, menos ella. Ante ello, le solicitó al vicepresidente de Alpine una promoción de empleo (como Supervisor del Departamento de Manejo de Proyectos). No obstante, Alpine no le contestó su propuesta de mejorar en el empleo y, tiempo después, fue contratada la señora Sara Santana, alegadamente, amiga personal de la gerencia de Alpine.

En la *Demanda*, reiteró que, a principios de septiembre de 2021, Alpine publicó en la prensa la misma vacante para Supervisor del Departamento de Manejo de Proyectos, sin que se publicara internamente con anterioridad, tal y como requería e indica el Manual de Normas y Procedimientos de Recursos Humanos. Argumentó, que dicha conducta de Alpine era una crasa violación de sus normas y procedimientos. La vacante fue cubierta el 20 de septiembre de 2021, fecha en que comenzó a trabajar la señora Daisy Ortíz en dicha posición. Adujo, además, que la señora Daisy Ortíz la citó a una reunión y, de manera hostil y prepotente, comenzó a indagar sobre el horario de trabajo que tenía la apelante. También, le cuestionó sobre unos alegados atrasos que supuestamente tenía en los proyectos asignados como Gerente de Proyectos. Argumentó que este incidente, como otros posteriores, fueron informados al departamento de recursos humanos de Alpine, pero estos hicieron caso omiso. Esbozó que, luego de presentar la queja en el departamento de recursos humanos, su supervisora, Daisy Ortíz, continuó un patrón de persecución, creándole un ambiente hostil en el lugar de empleo. Alegó que dicho patrón le ha ocasionado graves daños por angustias mentales, los cuales fueron reclamados en la *Demanda*.

Además, expuso que era la única mujer de origen extranjero (venezolana) y la Gerente de Proyectos con la menor paga. Razonó que todos los demás Gerentes de Proyectos eran varones y sus edades fluctuaban entre los cuarenta (40) a cincuenta (50) años; y la otra mujer empleada como Gerente de Proyectos, tenía aproximadamente veintiséis (26) años. Expuso que, en o alrededor del 25 de octubre de 2021, solicitó por escrito un acomodo razonable y revisión salarial, pero Alpine hizo caso omiso a sus reclamos. Dicha actuación reflejó un claro discrimen por disparidad salarial, porque según su criterio, los tres (3) empleados varones que fueron contratados como gerentes de proyectos recibían un salario mayor. Por otro lado, manifestó que los únicos tres (3) proyectos que mantenía bajo su control le fueron removidos en o alrededor del 15 de noviembre de 2021. Asimismo, manifestó que la supervisora, Daisy Ortíz, solo verificaba y vigilaba el estatus de los tres (3) proyectos que mantenía la apelante y no así los demás proyectos asignados a los demás empleados jóvenes de Alpine. Ante el acoso por parte de la señora Daisy Ortíz, ésta acudió el 19 de octubre de 2021 ante la Unidad Antidiscrimen del Estado Libre Asociado de Puerto Rico, Departamento del Trabajo y Recursos Humanos y presentó una querella, a la cual se le asignó el número de caso *uadau 21 - 232C.*

Añadió que, la última gerente de proyectos contrada fue una joven de nombre Faima Rodríguez, de aproximadamente, veintiséis (26) años de edad y, con anterioridad a ésta, habían contratado a Felix Bolier, Edgard Díaz y Eric López, quienes tienen entre dieciséis (16) a veinte (20) años menos que ella. De igual manera, alegó que la conducta incurrida por Alpine infringió las disposiciones de la *Ley contra el Discrimen en el Empleo* (Ley Núm. 100-1959)[3]; *Ley para*

---

[3] 29 LPRA sec. 146 et seq.

*Garantizar la Igualdad de Derecho al Empleo*[4]*,* (Ley Núm. 69-1985); *Ley de Igualdad Salarial de Puerto Rico*[5]*,* (Ley Núm. 16-2017); *Ley de Represalias contra el Empleado por Ofrecer Testimonio*[6]*,* (Ley Núm. 115-1991); el Título VII de la *Ley de Derechos Civiles de 1964*[7]*,* (Título VII); y el *"Age Discrimination in Employment Act of 1967*[8]*"* (ADEA).

Finalmente, la parte apelante reclamó que se le restituyera en sus funciones; una partida de $300,000.00 por salarios y beneficios dejados de devengar como resultado de las prácticas discriminatorias al mantener una brecha salarial entre los salarios pagados a la apelante y los salarios pagados a los empleados varones. Además, requirió el pago prospectivo de los salarios, beneficios y bonificaciones que le hubiesen correspondido, de no haber ocurrido el discrimen; así como de una suma por concepto de compensación por los daños y perjuicios sufridos como resultado de los actos discriminatorios y represalias a los cuales ha sido sometida, estos daños se estiman en una suma no menor de $600,000.00; el pago de doble penalidad que contempla la Ley Núm. 100-1959, *supra*, la Ley Núm. 69-1985, *supra*, la Ley Núm. 16-2017, *supra* y la Ley Núm. 115-1991, *supra*; y el pago de una suma en concepto de honorarios de abogado no menor de $ 100,000.00.

En respuesta, el 18 de febrero de 2022, Alpine presentó *Contestación a la Demanda*[9]*,* en la cual aceptó y rechazó las alegaciones de la apelante y presentó sus defensas.

Luego de varios trámites procesales innecesarios de pormenorizar, el 2 de diciembre de 2022, Alpine presentó *Moción de Sentencia Sumaria*[10]. En esta, adujo que *no existe controversia de*

---

[4] 29 LPRA sec. 251 et seq.
[5] 29 LPRA sec. 1321 et seq.
[6] 29 LPRA sec. 194 et seq.
[7] 42 USC sec.2000e et seq.
[8] 29 USC sec. 621 et seq.
[9] Entrada # 4 de SUMAC.
[10] Entrada # 35 de SUMAC.

*hecho material y, en estricto derecho, procede disponer sumariamente del presente caso a favor de Alpine. Nada en este caso justifica que este Honorable Tribunal, así como las partes, inviertan su tiempo y recursos en un Juicio en su Fondo innecesario.* Con ella, detalló ciento sesenta (160) hechos que no están en controversia; así también, incluyó múltiples anejos como prueba y la transcripción de la deposición tomada a la señora Villoria Barrios. El 29 de diciembre de 2022, la apelante presentó *Oposición a moción de sentencia sumaria y solicitud de sentencia sumaria parcial sobre diferencia salarial*[11], e incluyó 31 anejos y la declaración jurada de la señora Villoria Barrios. Posteriormente, continuaron presentando mociones, a saber: el 9 de enero de 2023, Alpine sometió la *Réplica a moción de sentencia sumaria* de *Alpine y oposición a moción de sentencia sumaria parcial de la parte demandante*[12], el 10 de febrero de 2023, la apelante presentó la *Réplica a la oposición de la parte demandada a moción de sentencia sumaria parcial de la demandante*[13] y una *Dúplica a réplica a moción de sentencia sumaria de Alpine*[14], y el 9 de marzo de 2023, Alpine notificó una *Dúplica a moción de sentencia sumaria parcial de la parte demandante*[15].

Evaluadas las posiciones de las partes, el 23 de octubre de 2023, el TPI emitió una *Sentencia Sumaria*[16], en la cual desestimó la *Demanda* de la señora Villoria Barrios. Mediante este dictamen, emitió las siguientes determinaciones de hechos incontrovertidos[17], los cuales hacemos formar parte del presente dictamen:

1. Villoria Barrios nació el 10 de abril de 1957 y actualmente tiene 66 años.

---

[11] Entrada # 44 de SUMAC.
[12] Entrada # 45 de SUMAC.
[13] Entrada # 52 de SUMAC.
[14] Entrada # 53 de SUMAC.
[15] Entrada # 55 de SUMAC.
[16] Entrada # 61 de SUMAC.
[17] Se hace constar que las determinaciones de hechos son setenta y dos (72) en total, ya que, al momento de redactarlos, el Juez de instancia cometió un error en la secuencia de enumeración.

2. Villoria Barrios cursó estudios universitarios, en Venezuela, en Administración y Recursos Humanos.

3. En el 2013, Villoria Barrios completó una maestría, en Puerto Rico, en Administración de Empresas con especialidad en Gerencia de Proyectos.

4. Villoria Barrios no ha tomado otros cursos técnicos relacionados con la profesión de Gerencia de Proyectos.

5. Villoria Barrios no tiene una certificación de PMP en Gerencia de Proyectos.

6. Villoria Barrios trabajó en SMX, patrono a quien demandó en el 2001 en el Tribunal Federal para el Distrito de Puerto Rico.

7. Posteriormente, Villoria Barrios trabajó en el Banco Santander, empresa a la que demandó por despido injustificado.

8. Luego, Villoria Barrios trabajó en Trinexus, empresa a la que también demandó por despido injustificado.

9. El 4 de mayo de 2015, Villoria Barrios completó voluntariamente una solicitud de empleo en Alpine.

10. Al completar la solicitud de empleo, Villoria Barrios omitió la información de los tres (3) patronos previos: SMX, Banco Santander y Trinexus.

11. De la solicitud de empleo de Alpine surge que proveer información incorrecta u omitir información en la solicitud es causa de despido en Alpine.

12. Al completar la solicitud de empleo, Villoria Barrios escribió que el sueldo deseado era $42,000.00.

13. Villoria Barrios fue contratada en Alpine el 4 de mayo de 2015 como Gerente de Proyectos con un salario de $42,000.00.

14. Al momento de su contratación, Villoria Barrios era mujer, de nacionalidad venezolana, con cincuenta y siete (57) años.

15. Según reconoce Villoria Barrios, el ser fémina, de nacionalidad venezolana y de 57 años no impidieron su reclutamiento en Alpine.

16. Desde su contratación, Villoria Barrios fue orientada en Alpine sobre: (a) el trabajo en equipo; (2) las líneas de comunicación; (3) los ponches de asistencia; (4) el tiempo de trabajo; (5) las normas de asistencia y puntualidad; (6) el manual de empleados; y (7) la herramienta "Time Doctor".

17. Alpine tiene una plataforma llamada "Spring Tool" donde los empleados tienen disponible en formato digital las políticas aplicables en la compañía.

18. Villoria Barrios reconoce que la violación por parte de un empleado a las normas identificadas, esto es, las normas sobre horarios de trabajo, el uso de la computadora, el monitoreo bajo "Time Doctor", el respeto y la cordialidad, entre otras, afecta el buen y normal funcionamiento de Alpine

19. En el 2018, Villoria Barrios recibió un comunicado donde se le orientó nuevamente sobre la importancia de mantener un buen ambiente de trabajo, ser positivo, ser ético, trabajar en equipo, con respeto y cordialidad; se le reforzó la obligación de los empleados de cumplir con las normas de puntualidad, no abandonar sus áreas de trabajo sin autorización, no atender llamadas personales en horas laborables, dejadez en las funciones o negligencia en las responsabilidades asignadas, respeto al supervisor, obedecer o no incurrir en actos de insubordinación, no utilizar equipos de Alpine para propósitos personales, uso de vestimenta profesional, entre otras.

20. El horario de Villoria Barrios es de ocho (8) horas, de 8:30 a.m. a 5:30 p.m.

21. Para poder llegar antes de las 8:30 a.m. o salir más temprano de las 5:30 p.m., Villoria Barrios debe tener autorización previa y por escrito del supervisor.

22. Villoria Barrios debe ponchar cuando llega a la oficina y no antes de llegar a la compañía.

23. Implica un incumplimiento con el horario laboral cuando no hay evidencia escrita que sustente que Villoria Barrios solicitó autorización del supervisor para llegar o salir antes de horario.

24. Luego de su nombramiento regular en Alpine, Villoria Barrios recibió una Descripción General de cuáles eran sus funciones como Gerente de Proyectos de Alpine.

25. Desde su contratación hasta el 2019, Villoria Barrios fue supervisada en Alpine por Miguel Sáez, con quien mantuvo una buena relación.

26. En el 2017, Villoria Barrios fue amonestada por enviarle a un cliente unos documentos antes que a la supervisora y por incurrir en una acción contraria a una directriz.

27. Villoria Barrios también fue amonestada porque, a pesar de conocer las políticas de la compañía sobre conflicto de interés, le hizo un acercamiento a un cliente para trabajar con ellos directamente.

28. Entre principios del año 2018 hasta septiembre de 2021, Villoria Barrios trabajó para Alpine de forma remota.

29. El 31 de julio de 2018, Villoria Barrios le envió una comunicación a Néstor Centeno, dejándole saber su interés de ocupar el puesto vacante de Director que ocupaba Miguel Sáez.

30. Villoria Barrios reconoce que el historial que el empleado tiene con la compañía se toma en consideración para poder analizar si cumple con las expectativas de una posición.

31. Al momento de Villoria Barrios presentar la solicitud del puesto de PMO ya el personal de más alto rango en Alpine conocía de los señalamientos que ella tenía por incumplimientos con su horario de trabajo y por no seguir instrucciones.

32. Néstor Centeno nunca le dio una respuesta a Villoria Barrios sobre su petición a la posición de PMO.

33. Desde diciembre de 2019 hasta comienzos del 2021, Villoria Barrios fue asignada a trabajar en el área de Infraestructura, bajo la supervisión de Hiram López.

34. Dicho supervisor determinó no asignarle proyectos a Villoria Barrios y mantenerla en el área de documentación.

35. Daisy Ortiz comenzó a trabajar en Alpine el 20 de septiembre de 2021 como PMO. Supervisaba el Departamento de Manejo de Proyectos y toda la cartera de proyectos.

36. Al momento en que Daisy Ortiz fue contratada, en el Departamento de Manejo de Proyectos trabajaban: Eric López, Félix Bolier, Edgar Díaz y Villoria Barrios. Ninguna de estas personas fue contratada por Daisy Ortiz.

37. El 28 de septiembre de 2021, Villoria Barrios solicitó una reunión con Alicia Archilla, Gerente de Recursos Humanos de Alpine, para hablarle sobre la incomodidad que tenía con Daisy Ortiz, PMO.

38. La incomodidad de Villoria Barrios respondía a que su nueva supervisora le requería cumplir con su horario de trabajo y sus tareas.

39. En la reunión, Alicia Archilla le aclaró a Villoria Barrios de que, independientemente de que ella fuese una empleada exenta, tenía que asistir al trabajo, cumplir con su horario y cumplir con las tareas que le fueran asignadas.

40. Tras su llegada a Alpine, la supervisora Daisy Ortiz estableció unas reuniones de seguimiento los lunes, miércoles y viernes, de 9:00 a.m. a 10 a.m. con Villoria Barrios.

41. El propósito de esas reuniones era poder trabajar, mano a mano, y dar seguimiento a los proyectos, metas de cada proyecto, nuevos pasos, entre otros asuntos.

42. El lunes 4 de octubre de 2021, a las 9:00 a.m., Villoria Barrios tenía una reunión con su supervisora Daisy Ortiz para discutir los proyectos asignados.

43. En incumplimiento con la norma de asistencia, Villoria Barrios no asistió a la reunión. Se comunicó con su supervisora a las 11:02 a.m. del mismo día e indicó lo siguiente: "[t]uve una situación y llegué después de las 9:00 a.m., por ende, no me pude conectar."

44. El 4 de octubre de 2021, Villoria Barrios registró su asistencia a las 6:16 a.m., antes de bañarse y vestirse, mientras estaba en su casa y no en el trabajo.

45. El 5 de octubre de 2021, la supervisora Daisy Ortiz trajo a la atención del Departamento de Recursos Humanos su inconformidad con el desempeño de Villoria Barrios.

46. Villoria Barrios acepta su incumplimiento con el horario de trabajo, según señalado por Daisy Ortiz.

47. Villoria Barrios reconoce que hubo otras ocasiones en que registró su asistencia antes de su horario regular de trabajo, desde su casa, mientras no estaba ejerciendo funciones para Alpine. También reconoce que salía del trabajo antes de la hora de salida indicada y sin autorización del supervisor.

a. 28 de septiembre de 2021, ponchó su entrada a las 7:39 a.m. y su salida a las 4:01 p.m.

b. 30 de septiembre de 2021, ponchó su entrada a las 6:18 a.m. desde su casa

c. 1 de octubre de 2021, ponchó su entrada a las 6:11 a.m. desde su casa

d. 4 de octubre de 2021, ponchó su entrada a las 6:16 a.m. desde su casa

e. 5 de octubre de 2021, ponchó su entrada a las 6:41 a.m. desde su casa

f. 6 de octubre de 2021, ponchó su entrada a las 6:37 a.m. desde su casa

43. El 6 de octubre de 2021, Villoria Barrios recibió una amonestación por escrito respecto a su incumplimiento con las tareas asignadas y con la asistencia a reuniones.

44. Posteriormente, el 6 de octubre de 2021, Villoria Barrios cursó una comunicación a la administración de Alpine, en la que indica su inconformidad con Daisy Ortiz.

45. A partir del 8 de octubre de 2021, Villoria Barrios estuvo fuera del trabajo por reposo médico hasta el 14 de octubre de 2021.

46. El 19 de octubre de 2021, Villoria Barrios presentó una querella en la Unidad Antidiscrimen.

47. El 25 de octubre de 2021, Villoria Barrios pidió como acomodo razonable no ser supervisada por Daisy Ortiz.

48. La investigadora externa, Karen Cortiella, realizó una investigación sobre las inconformidades de Villoria Barrios hacia Daisy Ortiz y llegó a la conclusión de que no había ningún tipo de acoso hacia Villoria Barrios.

49. Del 29 de octubre de 2021 hasta el 10 de noviembre de 2021, Villoria Barrios estuvo fuera de su trabajo, acogida a los servicios del Fondo del Seguro del Estado (CFSE).

50. Al momento de presentar su reclamación en la CFSE, Villoria Barrios identificó como "accidente ocupacional" lo sucedido en la reunión del 28 de septiembre de 2021.

51. Villoria Barrios se reintegró a sus labores el 11 de noviembre de 2021.

52. El 11 de noviembre de 2021, la supervisora Daisy Ortiz le comunicó a Villoria Barrios que "debido al periodo que estuvo ausente, sus proyectos fueron reasignados para mantener los progresos".

53. Villoria Barrios se ausentó los días 22 y 23 de noviembre de 2021 y 15 de diciembre de 2021, sin notificar a su supervisora directa, Daisy Ortiz, en incumplimiento con las normas de empleo.

54. El 28 de enero de 2022, Villoria Barrios comunicó por correo electrónico a la Gerente de Recursos Humanos de Alpine que se ausentaría del trabajo por no sentirse bien

55. El 16 de febrero de 2022, Villoria Barrios comunicó por correo electrónico a la Gerente de Recursos Humanos de Alpine, con copia a la supervisora, que se ausentaría del trabajo.

56. Villoria Barrios fue suspendida de su empleo desde el 17 de febrero hasta el 24 de febrero de 2022 por abandono del área de trabajo, insubordinación y faltas al Código de Conducta.

57. El 17 de febrero de 2022, Villoria Barrios respondió con una carta a la referida suspensión.

58. Según el informe de "Time Doctor" que identifica el periodo del 1 de agosto de 2021 al 16 de febrero de 2022, Villoria Barrios accedió a páginas de internet y gestionó

asuntos irrelevantes para Alpine, tales como DTOP, wmplayer, uagmblackboard, el Nuevo Día y el Vocero.

59. Villoria Barrios reconoció que accedió a la página de la Universidad Ana G. Méndez durante horas laborables por medio de la computadora de la compañía, en contravención con las normas de empleo.

60. Villoria Barrios reconoce que, desde el 18 de enero de 2022, Daisy Ortiz le estuvo asignando tareas, a pesar de alegar en la *Demanda* que fue "removida de todas sus funciones y trabajo como Gerente de Proyectos".

61. Entre el 18 de enero y 8 de marzo de 2022, Villoria Barrios no revisó las comunicaciones de la supervisora Daisy Ortiz en el correo electrónico CarmenVilloria@alpinepr.net, por lo que las tareas asignadas no fueron completadas.

62. Fuera de las reclamaciones de discrimen, desigualdad salarial, ambiente hostil y represalias, Villoria Barrios reconoce no tener otra reclamación en contra de Alpine.

63. La inconformidad, hostilidad, represalias a las que Villoria Barrios se refiere en la *Demanda* ocurren en el periodo de supervisión de Daisy Ortiz.

64. Villoria Barrios reconoce que cuando se reunía con su supervisora en Alpine, Daisy Ortiz no la denigraba por su nacionalidad, edad o sexo.

65. Villoria Barrios desconoce cuál era el alcance de los proyectos trabajados por sus compañeros Eric López, Edgar Díaz y Félix Bolier.

66. Las situaciones que Villoria Barrios reclama, entiéndase la brecha salarial, la denegatoria de una posición como supervisora (2018) y el trato de la supervisora Daisy Ortiz (septiembre y octubre 2021) fueron previas a presentar una reclamación en la Unidad Antidiscrimen del DTRH.

67. Tras Villoria Barrios traer a la atención su inconformidad con Daisy Ortiz, de acudir a la Unidad Antidiscrimen, de acudir a la CFSE, se le continuaron asignando proyectos y tareas administrativas y no se le modificó su compensación.

Insatisfecha con la *Sentencia Sumaria* emitida por el foro apelado, el 6 de noviembre de 2023, la señora Villoria Barrios presentó ante el TPI *Moción de Reconsideración a Sentencia Sumaria*[18] y el 21 de noviembre de 2023, Alpine se refutó el petitorio

---

[18] Entrada # 62 de SUMAC.

de la apelante con una *Oposición a moción de reconsideración*[19]. El 6 de marzo de 2025, el foro apelado notificó la *Resolución*[20] en la cual declaró No Ha Lugar la *Moción de Reconsideración a Sentencia Sumaria*[21] presentada por la apelante.

Inconforme aun, el 21 de marzo de 2025, la señora Villoria Barrios sometió el recurso de apelación que nos ocupa, en el que arguyó el siguiente error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA DESESTIMANDO LA DEMANDA CON PERJUICIO EN SU TOTALIDAD, AL IGUAL QUE LA SOLICITUD DE SENTENCIA SUMARIA PARCIAL A FAVOR DE LA DEMANDANTE POR LA DIFERENCIA SALARIAL, MEDIANTE UNA SOLICITUD DE SENTENCIA SUMARIA, CUANDO EXISTEN CONTROVERSIAS EN LOS HECHOS MATERIALES Y ESENCIALES QUE REQUIEREN DE UN JUICIO PLENARIO.

Con el beneficio de la comparecencia de ambas partes, estudiado el expediente apelativo; así como el derecho aplicable, procedemos a resolver.

**-A-**

El Tribunal Supremo de Puerto Rico ha expresado en varias ocasiones que la sentencia sumaria es un remedio extraordinario y discrecional que sólo se debe conceder cuando no existe una controversia genuina de hechos materiales y lo que resta es aplicar el derecho[22]. En términos generales, al dictar sentencia sumaria, el tribunal deberá hacer lo siguiente:

> (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los que se incluyen con la moción en oposición, así como aquellos que obren en el expediente del tribunal;
> (2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos[23].

Analizados estos criterios, el tribunal no dictará sentencia sumaria cuando existan hechos materiales y esenciales

---

[19] Entrada # 64 de SUMAC.
[20] Entrada # 65 de SUMAC
[21] Entrada # 62 de SUMAC.
[22] *Maldonado v. Cruz*, 161 DPR 1, 39 (2004).
[23] *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004).

controvertidos; cuando haya alegaciones afirmativas en la demanda que no han sido refutadas; cuando surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material y esencial, o cuando como cuestión de derecho, no procede[24]. La sentencia sumaria se puede dictar a favor o en contra de la parte que la solicita, según proceda en Derecho[25].

Por tratarse de un remedio discrecional, el uso del mecanismo de sentencia sumaria tiene que ser mesurado y solo procederá cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos[26]. De tal manera, solo procede dictar sentencia sumaria cuando surge claramente que el promovido por la moción no puede prevalecer bajo ningún supuesto de hechos y que el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia[27]. Cuando no existe una clara certeza sobre todos los hechos de la controversia, no procede una sentencia sumaria[28]. Cualquier duda sobre la existencia de una controversia sobre los hechos materiales, debe resolverse contra la parte promovente[29]. Toda inferencia que se haga a base de los hechos y documentos que obren en los autos, debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de sentencia sumaria[30]. Así pues, tomando en consideración que la sentencia sumaria es un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley"[31].

---

[24] *Íd.*, págs. 333-334.
[25] *Maldonado v. Cruz, supra.*
[26] *Íd.*, pág. 334.
[27] *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714 (1986).
[28] *Metrop. de Préstamos v. López de Victoria*, 141 DPR 844 (1996).
[29] *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 DPR 563 (1997).
[30] Véase, *Piñero v. AAA*, 146 DPR 890 (1998); *Audiovisual Lang. v. Sist. Est. Natal Hnos., supra.*
[31] *Roig Com. Bank v. Rosario Cirino*, 126 DPR 613, 617 (1990) (énfasis suplido).

Es importante mencionar que, este Tribunal utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una moción de sentencia sumaria[32]. Por consiguiente, los criterios que este foro intermedio debe tener presentes al atender la revisión de una sentencia sumaria son los siguientes:

1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil y la jurisprudencia le exigen al foro primario;

2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36;

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia[33].

**-B-**

Nuestro Tribunal Supremo ha reconocido que existen, en esencia, dos modalidades de sentencia sumaria[34]. La primera, la es aquella que se dicta cuando los documentos ofrecidos por la promovente demuestran ausencia de controversia real sobre los hechos esenciales del caso y únicamente corresponde aplicar el derecho[35]. La segunda se conoce como la sentencia sumaria por insuficiencia de la prueba y es aquella que se dicta cuando, <u>después de un descubrimiento de prueba exhaustivo</u>, se determina que la prueba existente no es suficiente o adecuada para sostener las alegaciones y los elementos esenciales de la reclamación y, por ello, únicamente corresponde desestimarla[36]. A esta segunda le aplican

---

[32] *Íd.*

[33] *Roldan Flores v. M Cuebas*, 199 DPR 664, 679 (2018).

[34] *Medina v. M.S & D. Química de P.R., Inc.,* 135 DPR 716, 731-732 (1994).

[35] *Jusino et als. v. Walgreens,* 155 DPR 560, 577 esc. 15 (2001); *Medina v. M.S & D. Química de P.R., Inc., supra*, pág. 732.

[36] *Íd.*; *Medina v. M.S & D. Química de P.R., Inc., supra.*

las mismas normas y principios que tradicionalmente se han aplicado al considerarse mociones de sentencia sumaria[37].

Bajo la modalidad de insuficiencia de prueba, la parte promovente puede presentar su moción de sentencia sumaria después de que las partes han realizado un adecuado y apropiado descubrimiento de prueba[38].

La parte promovente tiene el peso de demostrar que la parte promovida no cuenta con evidencia admisible suficiente para aprobar al menos un elemento esencial[39]. *Íd.* También, tiene el peso de demostrar que se ha llevado a cabo un descubrimiento de prueba completo, adecuado y apropiado, evidenciando que ha explorado la posibilidad de la existencia de evidencia admisible[40]. Es decir, tiene que poner al tribunal en posición de evaluar si el descubrimiento de prueba realizado fue adecuado[41]. Para hacerlo, no será suficiente una simple alegación de que no existe evidencia suficiente para probar el caso[42]. Tampoco se considerará adecuado el descubrimiento de prueba cuando surja de un análisis de los documentos sometidos en apoyo de la solicitud, la oposición y el expediente que la parte promovente omitió auscultar alguna información que condujera a obtener prueba admisible[43].

En resumidas cuentas, para que el tribunal pueda dictar sentencia sumaria por insuficiencia de la prueba, la parte promovente debe persuadirlo de que: (1) no es necesario celebrar una vista evidenciaria; (2) la parte promovida no cuenta con evidencia suficiente para probar algún hecho esencial; y (3) como cuestión de derecho, procede la desestimación[44].

---

[37] *Íd. supra,* pág. 734.
[38] *Íd.,* pág. 732.
[39] *Íd.*
[40] *Íd.,* pág. 733.
[41]*Íd.*
[42] *Íd.*
[43] *Íd.*
[44] *Pérez v. El Vocero de P.R.,* 149 DPR 427, 447 (1999).

De ordinario, esta norma parte del principio de que le corresponde a la parte demandante probar su caso[45]. Aún más, no hay razón para ir a juicio cuando la parte demandante no tiene prueba a su favor tras culminar el descubrimiento de prueba[46].

**-C-**

El Artículo II, Sec. 1 de la Constitución del Estado Libre Asociado de Puerto Rico promulga la igualdad de todos los hombres y mujeres ante la ley[47]. Así, nuestra Ley Suprema expresamente prohíbe el discrimen por motivo de raza, color, sexo, nacimiento, entre otras[48]. El discrimen es un trato desigual injustificado que una persona sufre por perjuicio o arbitrariedad, sin que exista un fundamento razonable para ello[49].

Análogamente, la Ley Núm. 100- 1959, *supra,* prohíbe a un patrono despedir, limitar o discriminar a un empleado suyo por razón de edad, raza, color, sexo, entre otras[50]. A esos efectos, la Ley Núm. 100-1959, *supra,* establece una causa de acción civil como remedio para que la víctima del discrimen en el empleo pueda reclamar los daños sufridos como indemnización[51]. A pesar de que la reposición en el empleo es el remedio preferente y más completo ante un despido discriminatorio, esta no es siempre posible, lo cual redunda en daños económicos a favor del empleado perjudicado[52]. A esos efectos, el empleado tendrá derecho a recibir compensación por los daños emocionales, económicos y por la pérdida de ingresos[53].

---

[45] *Ramos Pérez v. Univisión, supra,* pág. 218.
[46] *Íd.,* pág. 218-219.
[47] Art. II, Sec. 1, Const. ELA, LPRA Tomo 1.
[48] *Garib Bazaín v. Hosp. Aux. Mutuo et al.,* 204 DPR 601, 614 (2020).
[49] *Íd.,* pág. 630.
[50] *Segarra Rivera v. Int'l Shipping et al., supra.*
[51] *Ruiz Mattei v. Commercial Equipment Finance, Inc.* 2024 TSPR 68 resuelto el 21 de junio de 2024.
[52] *Torres Rivera v. Econo Rial, Inc.,* 208 DPR 346, 358 (2021).
[53] *Íd.*

**-D-**

La Ley Núm.16-2017[54], según enmendada, prohíbe el discrimen salarial por razón de sexo en trabajo comparable que requiera igual destreza, esfuerzo y responsabilidades bajo condiciones de trabajo similares. El Artículo 3 de la Ley Núm. 16-2017, *supra*, dispone lo siguiente:

> "Ningún patrono discriminará salarialmente por razón de sexo contra empleados que laboran en Puerto Rico y realizan trabajo comparable que tenga igual funciones, requiera igual destreza, esfuerzo y responsabilidades bajo condiciones de trabajo similares, a menos que dicha diferencia se deba a:
>
> i) un sistema bona fide que premia la antigüedad o el mérito en el empleo;
>
> ii) un sistema de compensación a base de la cantidad o calidad de la producción, ventas o ganancias;
>
> iii) por educación, adiestramiento o experiencia, en la medida en que esos factores están razonablemente relacionados con el trabajo específico en cuestión; o
>
> iv) cualquier otro factor razonable que no sea el sexo de la persona".

**-E-**

La Ley Núm.115-1991[55], es un estatuto de índole reparador, cuyo principal propósito es proveer protección a los empleados, tanto de las instrumentalidades gubernamentales como del sector privado, frente a determinadas actuaciones ilegítimas por parte de sus patronos[56]. Específicamente, el antedicho precepto prohíbe al patrono despedir, amenazar o discriminar a un empleado, en ocasión a que éste ofrezca, o intente ofrecer, cualquier testimonio, información o expresión, ya sea verbal o escrita, ante un foro administrativo, legislativo o judicial de Puerto Rico[57]. A menos de que se trate de expresiones difamatorias o constitutivas de un

---

[54] 29 LPRA sec. 251 *et seq. Supra.*

[55] 29 LPRA sec. 194 *et seq.*

[56] *Vázquez Ortiz v. Mun. de Humacao,* 197 DPR 656 (2017); *Cordero Jiménez v. UPR,* 188 DPR 129 (2013); *Feliciano Martes v. Sheraton,* 182 DPR 368 (2011); y la Exposición de Motivos, Ley Núm.115-19991, *supra.*

[57] 29 LPRA 194 a; *Vázquez Ortiz v. Mun. de Humacao, supra; Cordero Jiménez v. UPR, supra.*

secreto de negocio, toda conducta patronal de represalia en contra de sus empleados y fundamentada en un acto protegido por ley, no es avalada por el ordenamiento jurídico.

Ahora bien, para que un reclamo al amparo del estatuto en cuestión sea eficaz en derecho, la parte promovente está obligada a demostrar su causa de acción y cumplir con una de dos cargas probatorias reconocidas en el ordenamiento jurídico, a saber, la directa o la indirecta. En la directa, el empleado afectado deberá probar su caso mediante *evidencia directa o circunstancial*, con la que demuestre un nexo causal entre la conducta del patrono demandado y el daño sufrido. En la indirecta, el empleado deberá probar un caso *prima facie* de represalia, mediante evidencia que demuestre: 1) que participó en una actividad protegida por la ley y; 2) que subsiguientemente fue despedido, amenazado o discriminado por su patrono[58]. En este contexto, la *proximidad temporal* entre la acción adversa sufrida por el empleado y el ejercicio de la actividad protegida en la que incurrió bastará para cumplir con el *onus probandi* de un caso *prima facie* al amparo del precepto legal aquí en discusión[59]. Una vez lo anterior, compete al patrono alegar y fundamentar una razón legítima y no discriminatoria en la que apoya la legalidad del despido. De cumplir con ello el patrono, entonces el empleado deberá demostrar que la razón alegada por este era un mero pretexto para el despido[60].

### III.

En esta ocasión, tenemos la oportunidad de resolver si procede una sentencia sumaria en un caso en el que se reclama un remedio al amparo de la *Ley contra el Discrimen en el Empleo, supra*;

---

[58] 29 LPRA sec. 194a (c); *Vázquez Ortiz v. Mun. de Humacao, supra*; *Rivera Menéndez v. Action Services,* 185 DPR 431 (2012); *supra*; *S.L.G. Rivera Carrasquillo v. A.A.A.,* 177 DPR 341 (2009).
[59] *Rivera Menéndez v. Action Services, supra*; *Feliciano Martes v. Sheraton, supra*; *Marín v. Fastening,* 142 DPR 499 (1997).
[60] 29 LPRA sec. 194a(c).

*Ley para Garantizar la Igualdad de Derecho al Empleo, supra*, *Ley de Igualdad Salarial de Puerto Rico, supra*, *Ley de Represalias contra el Empleado por Ofrecer Testimonio, supra*, el Título VII de la *Ley de Derechos Civiles de 1964, supra,* y el *"Age Discrimination in Employment Act of 1967, supra.* Además, debemos identificar si la *Moción de Sentencia Sumaria* y el dictamen se basaron en insuficiencia de la prueba porque, de ser así, nos corresponde examinar si se realizó un descubrimiento de prueba adecuado o si la parte oponente logró controvertir la contención de insuficiencia de prueba.

Tras un análisis minucioso del expediente del caso, resolvemos que el TPI no incidió al emitir la *Sentencia Sumaria* apelada. De un examen de la *Sentencia Sumaria* apelada y de la *Moción de sentencia sumaria* arroja diáfanamente que están predicadas en la modalidad de insuficiencia de prueba. Así pues, al analizar el trámite procesal del caso, resulta evidente concluir que se cumplió a cabalidad con ese requisito de haber trascurrido un descubrimiento de prueba adecuado y amplio[61].

Pasemos a evaluar las determinaciones del foro apelado. En torno a la primera causa de acción sobre disparidad salarial por razón de sexo al amparo de la Ley Núm.16-2017, el TPI correctamente determinó que la apelante debe demostrar que: (1) la desigualdad salarial se debe a su sexo y no a otro factor razonable y (2) que dichos empleados tienen o tenían responsabilidades de trabajo similares.

Al examinar la prueba presentada para sustentar esta primera causa de acción, a saber: copia de los deberes y las responsabilidades de los tres varones antes mencionados, y copia de los deberes y responsabilidades de la apelante, surge

---

[61] Entradas # 9, 19, 26, 33, 39 y 51 sobre minutas sobre conferencia sobre el estado de los procedimientos.

diáfanamente que los trabajos realizados por los tres varones, Analista de Implementación y Calidad y Analista Senior de Implementación y Calidad, no son equivalentes a las funciones que realizaba la señora Villoria Barrios como Gerente de Proyectos. Por lo cual, colegimos que, el segundo criterio no fue demostrado por la apelante.

Además, al examinar la *Oposición a moción de sentencia sumaria y solicitud de sentencia sumaria parcial sobre diferencia salarial*[62] presentada por la apelante, coincidimos con el TPI que la parte admite que, además de ella, había otra mujer que trabajaba como Gerente de Proyectos y a esta empleada se le pagaba un salario superior al de la señora Villoria Barrios. Ante ello, es acertada la conclusión del TPI en cuanto a que la *misma parte ha demostrado, mediante sus propias alegaciones, que la disparidad salarial en la compañía no surge por razón de sexo*[63]. En otras palabras, la apelante no demostró ninguno de los criterios para prevalecer en una causa de acción al amparo de la Ley Núm. 16-2017.

Referente a la segunda causa de acción sobre el alegado discrimen por razón de edad, sexo y nacionalidad al amparo de la Ley Núm. 100-1959, la Ley Núm. 69-1985, el Título VII y ADEA, la señora Villoria Barrios tenía que demostrar que: (1) pertenece a una clase protegida; (2) cumplir con su trabajo satisfactoriamente; (3) el patrono llevó a cabo un acto perjudicial en su contra; y (4) fue reemplazado por otra persona igualmente cualificada. Luego de examinar el expediente, colegimos que, la apelante no demostró con prueba adecuada y satisfactoria los criterios 2, 3 y 4. La apelante falló en establecer que cumplía a cabalidad con los cuatro hechos básicos que dan lugar para que se active la presunción contra el patrono. Coincidimos con la apreciación del TPI en cuanto a que *la*

---

[62] Entrada # 44 SUMAC.
[63] Entrada # 61 de SUMAC.

*prueba, en todo caso, revela un patrón de incumplimiento con las normas de la empresa y un desempeño deficiente por parte de Villoria Barrios, además de una conducta poco respetuosa y disciplinada*[64].

Sobre la tercera causa de acción, represalias bajo el palio de la Ley Núm. 115 -1991, la prueba presentada demuestra que la señora Villoria Barrios participó en actividades protegidas por la ley, pues el 19 de octubre de 2021, acudió al DTRH y presentó una querella sobre acoso laboral en la Unidad Anti-Discrimen. Previo a esto, había comunicado internamente las desavenencias que había con su supervisora. No obstante, aun cuando la apelante participó en actividades protegidas por la Ley Núm. 115 -1991, se olvidó en presentar prueba que demostrara que la conducta o actos de Alpine constituían discrimen en el empleo, a raíz de dicha participación.

Es menester destacar que, las alegaciones no hacen prueba, por lo cual, la apelante estaba obligada a presentar prueba que controvirtiera la presentada por Alpine. Reiteramos la normativa establecida por nuestro Tribunal Supremo: *"la mera alegación de un hecho básico, sin que haya sido debidamente establecido, no activa una presunción que permita la inferencia de un hecho presumido". McCrillis v. Aut. Navieras de PR, 123 DPR 113, 141 (1989). Determinamos que Villoria Barrios falló en establecer, por preponderancia de la prueba, un caso prima facie de discrimen*[65].

Así pues y como sostiene el tratadista Echavarría Vargas, "la solicitud de sentencia sumaria por insuficiencia de prueba solo debe prosperar en aquellas ocasiones en las cuales no exista ninguna prueba. No es un asunto de credibilidad o de fuerza de la prueba,

---

[64] *Por otro lado, la prueba sometida por Alpine demostró las violaciones a las normas de empleo, entre las cuales se encuentran incumplir con su horario de trabajo sin autorización, registrar su asistencia al trabajo desde la casa sin ejercer funciones para la empresa, faltar a reuniones programadas con sus supervisores, acceder a la página de la Universidad Ana G. Méndez y utilizar la herramienta "Blackboard" durante horas laborables. En todo caso, esta conducta justifica las acciones disciplinarias ejercidas por la empresa, las cuales no consideramos discriminatorias por razón de su edad, sexo o nacionalidad.* Apéndice del apelante, TPO págs. 234, 608, 956, 1263, 1273, 1277, 1452, 1455, 1454, 1455, 1456.
[65] Entrada # 61 de SUMAC.

sino de inexistencia de evidencia[66]". En el caso de autos, ante la ausencia de controversias de hechos medulares y la admisión de todos los hechos incontrovertidos propuestos por Alpine, y la apelante basarse en meras alegaciones, las cuales no constituyen prueba[67], corresponde confirmar la sentencia sumaria aquí impugnada. Es decir, el error atribuido al TPI no fue cometido.

## IV.

Por los fundamentos antes expuestos, los cuales hacemos formar parte de este dictamen, ***confirmamos*** la sentencia sumaria impugnada, mediante la cual se desestiman todas las reclamaciones presentadas.

**Notifíquese inmediatamente**.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[66] J. A. Echavarría Vargas, *Procedimiento Civil Puertorriqueño*, Colombia, 2012, pág. 221.

[67] *UPR Aguadilla v. Lorenzo Hernández,* 184 DPR 1001, 1013 (2012); *Miguel A. Pereira Suárez v. Junta de Directores del Condominio Ponciana*, 182 DPR 485, 509-510 (2011).